[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 07 2000
THOMAS K. KAHN
CLERK

_____

No. 99-8063

_____

D. C. Docket No. 96-01459-1-CV-JRS

JUDY R. PALMER,

                                                        Plaintiff-Appellant,

        versus

BOARD OF REGENTS OF THE UNIVERSITY
SYSTEM OF GEORGIA,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 7, 2000)**

Before COX, BIRCH and BARKETT, Circuit Judges.

BARKETT, Circuit Judge:

        Judy Palmer appeals from a final judgment following a jury verdict in favor

the Board of Regents of the University System of Georgia (the "University

System"), on her religious discrimination claim against the University System,

brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e, et seq. On appeal, Palmer contends that the district court failed to instruct the jury correctly on evaluating the reasons advanced by the University System for not selecting her for a permanent position on the faculty at Kennesaw State University. Palmer also argues that the district court erred in excluding her proffered evidence of other alleged acts of anti-Semitic discrimination in the University System.

## BACKGROUND

Palmer, who is Jewish, was a temporary assistant professor at Kennesaw State University ("KSU") from September 1993 through the summer of 1995. KSU is operated by the Board of Regents of the University System of Georgia. The University employs a number of temporary instructors, who teach on a full time or part time basis, in addition to the permanent faculty members.

Palmer applied for two different permanent faculty positions at KSU for the 1994-95 academic year. Before permanent faculty members are hired, the University appoints a search committee to conduct a national search. The search committee reviews applications, prepares a list of ten candidates, and advises the chair on the selection of three finalists from that short list. The full department then votes to select one of the three finalists. Palmer was a finalist for one of the

positions for which she applied but admits that the candidate who was chosen for the position was better qualified. The other position was not filled. Palmer then applied for another permanent position in the foreign language department at KSU for the 1995-96 academic year. From a pool of 79 applicants, she was again a finalist. On July 13, 1995, the department selected Carol Wilkerson for the position instead of Palmer.

Palmer filed suit in June 1996, alleging that the University System did not select her because she is Jewish. Before trial, the University System filed a motion in limine seeking to exclude evidence of other persons who had filed suits against the University System for discriminating against Jewish people. Palmer sought to introduce such evidence in order to bolster the credibility of her witness, and to prove that the University System's stated reasons for not hiring her were pretextual. Specifically, Palmer argued that the University System opposed hiring her not only because she was Jewish but also because her husband was a lawyer. A witness testified for Palmer that two members of the search committee had stated that hiring her could be problematic because she was Jewish and her husband was a lawyer. Palmer thus sought to introduce the evidence of the previous suits against KSU because they were spearheaded by the husband of one of the Jewish plaintiffs

and thus supported her theory that the University System feared that hiring her would create a similar situation.

Ruling on the University System's motion in limine, the trial court held that Palmer could not present evidence about any other lawsuit. In weighing the probative value of the evidence against any prejudicial effect it might have, the trial court found that:

> this evidence of other decision makers' statements or actions in other departments [which Palmer seeks to introduce] would cause the Defendants to have to produce evidence to defend its actions in those other cases. This is too remote to be relevant to the motive here. The Plaintiff can question the decision makers concerning their motive as to their knowledge of the atmosphere at the University or their knowledge of other complaints of anti-Semitism at Kennesaw. This should accomplish their stated purpose in offering the evidence. The court finds that the actions alleged against these other persons is too remote and the prejudice in bringing in the acts alleged by other persons and the confusion cause by this, even if not offered to show propensity, would cause the Court to try the three other cases before this jury. The Court further finds it questionable whether a jury charge could lessen the prejudice or confusion, especially in this case, where the decision makers were different, the department was different, and the method of choosing the person for the position was different.

The case proceeded to trial, and after Palmer presented her case, the University System presented testimony that Palmer had not been selected for the position in question because, when submitted to a vote, the Foreign Languages Department viewed Carol Wilkerson as a better candidate. Of the seven voting members of the Department, five voted for Wilkerson, one voted for Palmer, and

one abstained.  The five Department members who voted against Palmer each offered an explanation of his or her vote.[1]

At the jury instruction conference, Palmer submitted a proposed instruction, in addition to the pattern jury instructions, that more specifically explicated that if the jury found that the reasons offered by the University System to justify its hiring decision were pretextual, it would be authorized to find intentional religious discrimination on the part of the University System.  The trial court declined to give the requested instruction.  The jury ultimately returned a verdict for the University System and Palmer now appeals.

We review the trial court's rulings on the admissibility of evidence for abuse of discretion.  Goulah v. Ford Motor Co., 118 F.3d 1478, 1483 (11th Cir. 1997).  We review jury instructions de novo to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party.  United States v. Chandler, 996 F.2d 1073, 1085 (11th Cir.1993), cert. denied, 512 U.S. 1227 (1994).  When reviewing the propriety of a trial court's charge to the jury, our task is to "examine whether the jury charges, considered as a whole, sufficiently instructed the jury so

---

[1]McAllister was influenced by Palmer's equivocal reference letter from a former professor and by Palmer's poor oral presentation to the Department; Bobia voted for Wilkerson because she had more college teaching experience; Arrizabalaga voted for Wilkerson because of her pedagogy and the video Wilkerson provided of her teaching a class; Fideli voted for Wilkerson because she found Wilkerson's presentation and academic credentials superior; Laval voted for Wilkerson on the basis of her presentation and Palmer's limited role in the Department during temporary appointments.

that the jurors understood the issues and were not misled." United States v. Starke, 62 F.3d 1374, 1380 (11th Cir. 1995). So long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions. See Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1543 (11th Cir. 1996). Reversal is only warranted if the failure to give the instruction resulted in prejudicial harm to the requesting party. See Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1295 (11th Cir. 1998).

## DISCUSSION

First, we do not find any merit to Palmer's argument that the district court abused its discretion in excluding evidence of the existence of the other lawsuits against the University System. The complaints that she sought to introduce involved different decision-makers, different departments, and different hiring processes. Moreover, Palmer was not precluded from presenting evidence of an anti-Semitic atmosphere at the University. We cannot say that the district court's decision, arrived at after appropriately considering and weighing the probative value against the prejudicial effect, constitutes an abuse of discretion.

Palmer next argues that notwithstanding how we rule on the evidentiary issue, she is entitled to a new trial because the district court erred in failing to instruct the jury that it could permissibly draw an inference of intentional religious

discrimination if it believed her prima facie case and disbelieved the University System's stated reason for not hiring Palmer. Palmer does not deny that the instructions given to the jury constituted a correct statement of the law. Rather, Palmer contends that the charge was not properly balanced because "the jury was not specifically informed that it was authorized to find for the Plaintiff without any additional evidence of discrimination." Specifically, Palmer suggests that the instructions given did not make it sufficiently clear that, having established a prima facie case, she did not need to present additional evidence in order to rebut the non-discriminatory reasons given by the University System for its action.

The University System concedes that a factfinder's determination that the plaintiff has established the elements of a prima facie case and that the reasons advanced by the defendant for the adverse action are untrue suffices to support a jury's verdict of intentional discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). We have held that "a plaintiff is entitled to survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." Combs v. Plantation Patterns, 106 F.3d 1519, 1529 (11th Cir.1997), cert. denied sub nom. Combs v. Meadowcraft Co., 522 U.S. 1045 (1998). Thus the ultimate question under these

circumstances is to be resolved by a jury. The University System does not quarrel with these statements of law but maintains that the general instructions given by the trial court adequately advised the jury of the relevant law.

We have previously observed that it is inappropriate to instruct the jury with phrases like "prima facie case" and "burden of production" because "they create a distinct risk of confusing the jury." Dudley v. Wal-Mart Stores, Inc., 166 F.3d 1317, 1322 (11th Cir.1999). As the Second Circuit stated, "'[p]rima facie case' is not a term readily understood by jurors, and it has at least two meanings for judges. Moreover, the distinction between burden of persuasion and burden of production is not familiar to jurors, and they may easily be misled by hearing the word 'burden' (though referring to a burden of production) used with reference to a defendant in an explanation of that part of the charge that concerns a plaintiff's burden of persuasion. Finally, telling the jury that the burden of persuasion 'shifts back' to the plaintiff after the defendant has satisfied its burden of production runs the risk of creating extra confusion." Cabrera v. Jakobovitz, 24 F.3d 372, 381 (2nd Cir. 1994).

This is not to say, however, that because phrases such as "prima facie case" or "burden of production" should not be used with or explained to the jury, the plaintiff need not establish the elements of a prima facie case. There is no question

that the plaintiff bears the ultimate burden of proving that discriminatory animus was a determinative factor in the adverse employment decision.  The plaintiff "may succeed in this either directly by persuading the [fact finder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981).  As the Second Circuit put it, "the jury needs to be told . . . [it] is entitled to infer, but need not infer, that this burden has been met if they find that the four facts previously set forth [elements of the prima facie case] have been established and they disbelieve the defendant's explanation." <u>Cabrera</u>, 24 F.3d at 382.  The jury's disbelief of the defendant's explanation is enough because the untruthfulness itself can provide the necessary inference of discrimination.  The Third Circuit explained:

> The rationale for placing so much emphasis on the justification proffered by the employer can be found in the [Supreme Court's statement that] unexplained acts "are more likely than not based on the consideration of impermissible factors. . . [and] when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts  only with some reason, based his decision on an impermissible consideration such as race." [I]t is only natural that the focus of a discrimination trial in accordance with McDonnell Douglas will be the veracity of the justification offered by the employer to explain its conduct. If the employer fails to tell the truth, it does so at is own peril and the jury may infer that the real motivation is the one that the plaintiff has charged.

Smith v. Borough of Wilkinsburg, 147 F.3d 272, 279 (3rd Cir. 1998) (internal citations omitted).

The argument that the jury may draw a permissible inference of intentional religious discrimination if it disbelieves the University System's stated reason for not hiring Palmer is a logical extension of our prior decisions reversing the grant of summary judgment for an employer on the ground that the jury is entitled to infer discrimination from pretext. See e.g., Richardson v. Leeds Police Department, 71 F.3d 801, 803 (11th Cir.1995); Howard v. BP Oil Co., 32 F.3d 520 (11th Cir. 1994); Hairston v. Gainesville Sun Publishing Co, 9 F.3d 913 (11th Cir. 1993). As the Third Circuit stated in Smith, "[i]t is difficult to understand what end is served by reversing the grant of summary judgment for the employer on the ground that the jury is entitled to infer discrimination from pretext . . . if the jurors are never informed that they may do so." 147 F.3d at 279.

However, in this case, we cannot say that the trial court erred in its instructions to the jury. In examining a trial court's formulation of jury instructions, we apply a deferential standard, looking at the instructions as a whole "to determine whether they fairly and adequately addressed the issue and correctly stated the law." Jennings v. BIC, 181 F.3d 1250, 1259 (11th Cir. 1999) (quoting Christopher v. Cutter Labs., 53 F.3d 1184, 1190 (11th Cir. 1995)). "[W]e will find

reversible error in the refusal to give a requested instruction only if . . . the failure to give the instruction resulted in prejudicial harm to the requesting party." Roberts & Schaefer Co., 152 F.3d at 1295. First of all we cannot say, considering the totality of the circumstances, that Palmer was prejudiced by the trial court's refusal to deliver the specific instructions proposed by her. Palmer concedes that the trial court conveyed the law correctly in the instructions, arguing only that the court should have added her suggested language for more clarity. Both sides presented and argued their cases with a correct understanding of the law, and the instructions given fairly addressed the issues and correctly stated the law. We find that the district court in this case committed no reversible error in delivering its jury instructions. We would however suggest that it might be helpful for the Committee On Pattern Jury Instructions of the District Judges Association of the Eleventh Circuit to revisit the pattern jury instruction on this issue to consider whether any improvements in clarity might be warranted.

AFFIRMED.

COX, Circuit Judge, specially concurring:

I concur in the judgment, and join the court's opinion, except for those parts that suggest that an additional jury instruction may have been helpful. Additional jury instructions about a prima facie case and what inferences may be drawn from certain evidence may well confuse rather than clarify, as the court explained in *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322 (11th Cir. 1999).