[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 30, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-11405

_____

D. C. Docket No. 01-01466-CV-8-T-27MAP

GLEN J. CONROY,

Plaintiff-Appellant,

versus

ABRAHAM CHEVROLET-TAMPA, INC.,
d.b.a. Autoway Chevrolet,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 30, 2004)**

Before WILSON and FAY, Circuit Judges, and MILLS[*], District Judge.

FAY, Circuit Judge:

---

[*]Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

The main thrust of this appeal involves the question of whether or not it is mandatory that district courts give a pretext instruction to the jury in employment discrimination cases. We decide that it is not and answer in the negative. The other issue raised deals with the admissibility of certain evidence and we find no abuse of discretion.

Glenn J. Conroy ("Conroy") appeals from a final judgment entered after a jury returned a verdict in favor of his former employer, Abraham Chevrolet-Tampa ("Abraham Chevrolet"). Conroy sued Abraham Chevrolet, alleging his former employer had discharged him because of his age and in retaliation for his refusal to terminate another older worker, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* In his appeal, Conroy first argues that the district court erred by admitting testimony regarding the results of a post-termination investigation. Conroy also contends the district court erred in refusing his request that the jury receive an instruction on "pretext"– that is, for the jury to be instructed it could infer discrimination if it disbelieved Abraham Chevrolet's explanation for firing Conroy. For the reasons set forth below, we find the district court did not commit reversible error and therefore affirm.

I.

Conroy, who was born in 1946, joined Abraham Chevrolet as a sales manager for its commercial fleet department in March 2000. William Bledsoe ("Bledsoe") became general manager of the dealership in October 2000 and remained until he was discharged in April 2001. Conroy alleged that during Bledsoe's time at the dealership, Bledsoe frequently made "ageist" comments, referring to the staff in the commercial sales department as "geriatrics" and referring to older employees as "old-geezer," "old-fart," and "dead wood." Bledsoe admitted to making at least some of these comments, but he claimed they were slang expressions and that he did not realize they would offend some employees. Bledsoe also admitted to mentioning his desire to hire "younger and more aggressive people," but stated that he was speaking figuratively, and not literally.

When Bledsoe took over as general manager, he expressed concern to Conroy about the commercial department's poor performance. According to Conroy, Bledsoe asked him to fire another employee, Dick Weber, who was in his early 70's at the time. Bledose denied ever making this request, and instead contended that Conroy attempted to partially blame Weber for the department's substandard performance and even asked Bledsoe if he could fire Weber. Bledsoe claimed he responded by saying Conroy could fire Weber if that was indeed the

3

reason for the department's low performance. To add further support to Bledsoe's contention that he never considered firing Weber, Abraham Chevrolet pointed out at trial that Weber was selling more vehicles than anyone else in the department, with 56 percent of the sales for the entire commercial fleet in 2000.

Bledsoe fired Conroy on January 15, 2001, telling Conroy he was doing a "good job" but that the company was going in a different direction. But when Conroy attempted to receive unemployment benefits, he discovered that Bledsoe's explanation for discharging Conroy was "unsatisfactory performance." Conroy contacted Roberta Bonavia, the Human Resources Director of Abraham Chevrolet's parent company, Auto Nation, Inc, and objected to Bledsoe's representation that poor performance was the motivating factor behind his termination. After Bonavia investigated the matter, Bledsoe agreed to change the stated reason for Conroy's discharge to "other."

On March 19, 2001, Conroy filed a charge of discrimination with the EEOC. Conroy then initiated his complaint against Abraham Chevrolet in August 2001, alleging Bledsoe had terminated him due to his age and because of his refusal to fire Dick Weber, an older employee, in violation of ADEA.[1] The district court denied Abraham Chevrolet's motion for summary judgment and the case

_____

[1]Conroy's complaint also included an ERISA claim which was resolved before trial and is not an issue in this appeal.

proceeded to trial.

At trial, Conroy called Bonavia to testify regarding her investigation of the circumstances surrounding Conroy's discharge. Bonavia stated that when Conroy spoke with her, he said he believed he was terminated because he refused to fire Dick Weber. Nevertheless, Bonavia testified that based on her investigation, she believed Bledsoe terminated Conroy for poor performance, and that he told Conroy otherwise to "soften the blow." Conroy then asked Bonavia questions directed at the thoroughness of her investigation, and she admitted to having only talked to one other employee to determine whether Bledsoe sought to have Dick Weber fired. On cross-examination, Abraham Chevrolet asked Bonavia if, when investigating Conroy's claims, she had looked into industry standards regarding the number of sales and amount of profits each sales associate should produce each month. Conroy immediately objected to this line of questioning, claiming that information acquired after termination was inadmissible. The district court, however, allowed the questioning, reasoning that Conroy had "opened the door" on direct examination with questions to Bonavia suggesting that she had not adequately investigated his claims. Bonavia then testified that although sales associates are supposed to sell about 12 to 15 cars per month and account for $20,000 in profit, Conroy's department never performed within this range. She

5

then stated that it was not unusual for this kind of poor performance to result in termination.

During the jury charge conference, Conroy proposed a jury instruction on "pretext." This instruction would have informed the jury that it was permitted, but not required, to infer discrimination or retaliation if it disbelieved Abraham Chevrolet's explanation for terminating Conroy. The district court declined to give this instruction, stating that (1) the Eleventh Circuit pattern jury instructions "sufficiently incorporate the concept that the plaintiff wishes to get across to the jury," and (2) the Eleventh Circuit has directed that due to the strong likelihood of jury confusion, juries are not to be instructed on the legal framework used to resolve employment discrimination cases. Conroy's counsel, did, however, have the opportunity to argue pretext to the jury in closing statements. The jury was also instructed on drawing inferences from the evidence,[2] weighing the credibility

---

[2]The jury instructions stated:

> [T]he law permits you to draw such reasonable inferences from the evidence that you feel are justified in the light of common experience...
>
> While you are free to draw inferences based on circumstantial evidence and are not limited solely to what you see or hear as the witnesses testify, remember that an inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact that has been shown to exist. In other words, you are not limited to bald statements of the witnesses and may make deductions and reach conclusions which reason, common sense, and experience lead you to draw from facts that

of witnesses,[3] and burden of proof.[4]

have been established by the evidence in the case, but you may not speculate or guess that such a fact exists. Remember also that while one or another of the lawyers may have asked you to draw inferences or reach conclusions from certain evidence, you may refuse to do so if those inferences or conclusions are not supported by the evidence or do not make sense to you.

[3]The instructions explained:

In considering the testimony of the witnesses, for example, you are the sole judges of the credibility or "believability" of that testimony and the weight to be given to that testimony.

In weighing the testimony of a witness, you should consider the witness' interest, if any, in the outcome of the case...You should also consider the extent to which the witness has been supported or contradicted by other credible evidence. You may, in short, believe or disbelieve all or any part of the testimony of any witness.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit that testimony...In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or to an unimportant detail, and whether the discrepancy appears to result from honest disagreement, innocent error, or intentional falsehood.

\*\*\*

If a person is shown to have knowingly testified falsely concerning any important or material matter, you obviously have a right to distrust the testimony of such an individual concerning other matters. You may reject all of the testimony of that witness or give it such weight or credibility as you may think it deserves.

[4]The jury charge stated:

In order to prevail on this claim, [Conroy] must prove, by a preponderance of the evidence, that [Conroy's] age was a substantial or motivating factor that prompted [Abraham Chevrolet] to terminate his employment.

The jury returned a verdict for Abraham Chevrolet on October 21, 2002. Conroy filed a timely motion for a new trial which the district court denied. The district court then entered final judgment in accordance with the verdict and Conroy now appeals.

II.

We first briefly address Conroy's contention that the district court committed reversible error in allowing Bonavia to testify about her post-termination investigation. We review the district court's evidentiary rulings for abuse of discretion, and will only reverse if an erroneous ruling resulted in "substantial prejudice." *Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1305 (11th Cir. 1999). In applying this standard, we will affirm a district court's evidentiary ruling unless the district court has made a "clear error of judgment" or has applied an "incorrect legal standard." *Id.* at 1306.

Given this standard, we find no abuse of discretion by the district court. Although we agree with Conroy that "after-acquired evidence cannot be used as the basis for Defendants' employment decision," *see Chapman v. AI Transport,*

---

\*\*\*

> On the other hand, it is not necessary for [Conroy] to prove age was the sole or exclusive reason for [Abraham Chevrolet's] decision. It is sufficient if [Conroy] proves age was a determining consideration that made a difference in [Abraham Chevrolet's] decision.

229 F.3d 1012, 1068 n.101 (11th Cir. 2000) (citing *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 359-60, 115 S. Ct. 879, 885, 130 L. Ed.2d 852 (1995)), we are not convinced that Bonavia's testimony regarding the monthly sales figures is considered "after-acquired." These were simply benchmarks that Bledsoe testified were available to him at the time he discharged Conroy. Nevertheless, even if Bonavia's testimony could be considered after-acquired, evidence which normally would be inadmissible is indeed admissible if the opposing party opens the door to that line of questioning. *See Shaps v. Provident Life & Acc. Ins. Co.*, 244 F.3d 876, 886 (11th Cir. 2001) (finding that although it would normally be improper for a defendant to present evidence of a plaintiff's financial condition, the defendant's evidence was proper as a response to plaintiff's initial attempt to portray herself as financially dependent). Bonavia's investigation became an issue at the trial. Once it was introduced as such by Conroy it was subject to full interrogation. We agree with the district court that when Conroy's direct examination consisted of questions to suggest that Bonavia performed an inadequate investigation, Abraham Chevrolet was entitled to respond by inquiring into the full extent of the investigation.

## III.

We now turn to Conroy's argument that the district court erred by not giving

the jury a specific instruction on pretext. "We review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." *Palmer v. Bd. of Regents of the Univ. Sys. of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000). If, however, we find that the instructions accurately reflect the law, the district court has wide discretion as to the instructions' style and wording. *See Bogle v. McClure*, 332 F.3d 1347, 1356-57 (11th Cir. 2003). When reviewing a district court's failure to give a requested instruction, even if the requested instruction correctly states the law, we will only reverse if (1) the contents of the requested instruction are not adequately covered by the jury charge and (2) the requesting party suffers prejudicial harm. *See Wood v. President & Tr. of Spring Hill Coll. in the City of Mobile*, 978 F.2d 1214, 1222 (11th Cir. 1992).

We agree with Conroy that his proposed instruction on pretext accurately states the law – the jury's disbelief of an employer's stated reason for termination may be enough to infer intentional discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49, 120 S. Ct. 2097, 147 L. Ed.2d 105 (2000). This Court, however, has previously held that a district court's failure to give this type of pretext instruction is not error. *See Palmer*, 208 F.3d at 975. Conroy nonetheless maintains *Palmer* is not applicable here because (1) *Palmer* was decided before the United States Supreme Court's decision in *Reeves*, and (2)

10

the jury instructions in *Palmer* did contain a pretext instruction and so were different than those given by the district court here.

We reject Conroy's contention that *Reeves* requires a pretext instruction to be given to the jury in employment discrimination cases. *Reeves*, resolving a circuit split, held that a finding of pretext may itself be enough to infer discrimination: "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 148. The Supreme Court was dealing with the question of sufficiency of evidence and did not address in any way the necessity of a particular jury instruction. *Reeves* therefore did nothing to change the law in the Eleventh Circuit – both before and after *Reeves*, a jury has been permitted to infer discrimination if it disbelieves the employer's stated reasons for termination. The *Palmer* decision, though reaffirming this principle, nonetheless held that a specific pretext instruction is not necessary.

We do realize that some circuits, in the wake of *Reeves*, now require the district courts to include a pretext instruction in their jury charge.[5] For example, in

_____

[5]Even before *Reeves*, two other circuits began to require jury instructions on pretext in employment discrimination cases. *See Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 280 (3d Cir. 1998); *Cabrera v. Jakabovitz*, 24 F.3d 372, 382 (2d Cir. 1994). *But see Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994) (holding pre-*Reeves* that a pretext instruction, which

11

*Ratliff v. City of Gainesville, Tex.*, the Fifth Circuit, relying on *Reeves*, held that the trial court erred when it refused to give the jury a permissive pretext instruction. 256 F.3d 355, 360-61 (5th Cir. 2001). *See also Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1241 (10th Cir. 2002) ("[A] trial court must instruct jurors that if they disbelieve an employer's proffered explanation they may – but need not – infer that the employer's true motive was discriminatory."). The majority of one Fifth Circuit panel, however, in *Kanida v. Gulf Coast Med. Pers. LP*, recently expressed concern that *Ratliff* unnecessarily expanded the scope of *Reeves* and urged for *en banc* reconsideration of its holding in that case. 363 F.3d 568, 577 (5th Cir. 2004) (holding that although the district court's refusal to give a pretext instruction was error under *Ratliff*, it was not *reversible* error). Moreover, other circuits have not interpreted *Reeves* to require a pretext instruction. *See Moore v. Robertson Fire Prot. Dist.*, 249 F.3d 786, 789-90 (8th Cir. 2001) (in expressing doubt that it would ever be reversible error to deny a requested pretext instruction, the court found no error here when the instructions accurately stated the law and did not preclude the jury from finding pretext); *Fite v. Digital Equip. Corp.*, 232 F.3d 3, 7 (1st Cir. 2000) (though the court found that plaintiff did not properly request a pretext instruction, it expressed doubt that a pretext instruction,

_____

describes only a permissible inference, is not necessary).

12

while permitted, is compulsory). We agree with those circuits that have not held *Reeves* to govern the question of whether a pretext instruction is necessary, and therefore conclude that *Reeves* does not limit *Palmer* as binding precedent for this Court.

Conroy next argues that *Palmer* does not control here because in *Palmer*, the jury instructions approved by this Court actually contained an instruction on pretext. The jury charge in *Palmer* did explain that one way the plaintiff could prove discrimination was to show that the employer's stated reasons for its actions were not true. But the plaintiff in *Palmer* argued in addition that the jury needed to be informed that it could find for the plaintiff without any other evidence of discrimination. *Palmer*, 208 F.3d at 973. This Court found no error in refusing to give this type of instruction. *Id.* at 975. Here, the district court declined Conroy's request to give an instruction specifically encompassing both ideas advocated by the plaintiff in *Palmer*: (1) that one way to prove discrimination is to show the employer's proffered explanation is not worthy of belief; and (2) that no additional evidence is necessary to prove discrimination. Conroy argues that because the instructions we approved in *Palmer* contained language similar to Conroy's first request, any language in *Palmer* indicating that this type of pretext instruction would be unnecessary is dicta. Though we do recognize that the instructions in

13

*Palmer* were different than those given here, we believe this Court's opinion in *Palmer* clearly rejected the argument that a pretext instruction is required in employment discrimination cases.

Even if *Palmer* were not controlling here, we would still hold there was no error in failing to give Conroy's requested instruction. Conroy argues that the jury was misled to believe that it could not infer discrimination or retaliation from a finding of pretext due to the district court's charge to the jury that (1) it was Conroy's burden to prove discrimination and (2) the jury could not second guess Abraham Chevrolet's legitimate business decisions. We do not agree, however, that either of these instructions misled the jury. First, the instruction on burden of proof required Conroy to establish discrimination, but it did not limit the methods by which he could prove it. Second, although the business judgment instruction explained to the jury that it could not second guess Abraham Chevrolet's legitimate business motives, it did not require the jury to believe that any of the legitimate reasons advanced by the employer were in fact the true motivations behind Conroy's discharge. Not only do we reject Conroy's assertion that these instructions inhibited the jury from inferring discrimination or retaliation based on a finding of pretext, but we consider them both to be standard jury instructions that accurately reflect the law in this Circuit.

14

Though we do acknowledge that Conroy's pretext instruction is also a correct statement of law, we can only reverse the district court's decision if (1) the contents of the requested instruction were not adequately covered by the jury charge and (2) Conroy suffered prejudicial harm. *See Wood*, 978 F.2d at 1222. The charge to the jury gave instructions on drawing inferences from the evidence and weighing the credibility of witnesses. This was sufficient to allow the jury to find discrimination or retaliation so long as they disbelieved Abraham Chevrolet's explanation for Conroy's termination. We also find it significant that Conroy's counsel made good use of his opportunity to argue pretext to the jury in closing statements:

> A claim has been made, there is no confession. Nobody ever confesses in a discrimination case. You're going to have [to] weigh the testimony and decide do you think age had something to do with it. And I would suggest to you that when the man who fires him or without any warning, any documented reports of anything going wrong and comes up here with inconsistent statements that you can read into, that inconsistency and make an inference that, perhaps, the reason that was given by them may not have been the real reason. That's going to be one of the jury instructions[,] that you can read into and understand what the evidence is, make reasonable inferences in terms of their explanation...You can certainly read into that. If there's an inconsistent reason, then the age maybe had something to do with it.

We therefore reject Conroy's contention that he was prejudiced by the district

15

court's failure to give his requested instruction.[6] *Cf. Kanida*, 363 F.3d at 579 (finding that because the jury instructions properly stated the law and because the plaintiff was given the opportunity during closing statements to argue that the evidence showed pretext, the failure to give the requested pretext instruction was not reversible error); *Moore*, 249 F.3d at 790-91 (in expressing doubt as to whether it would ever be reversible error to decline to give pretext instruction, the court noted that the plaintiff had the opportunity during opening and closing statements to argue pretext to the jury); *Gehring*, 43 F.3d at 343 (in finding that a pretext instruction was not necessary, the court noted the plaintiff's lawyer did argue pretext to the jury). Accordingly, we find no reversible error and hold that the district courts, though permitted,[7] are not required to give the jury a specific instruction on pretext in employment discrimination cases.

## IV.

For the reasons discussed above, the district court did not commit reversible error and we therefore AFFIRM.

AFFIRMED.

---

[6]Even those circuits that have since *Reeves* required a pretext instruction still subject a district court's failure to give this instruction to harmless error analysis. *See Kanida*, 363 F.3d at 578; *Townsend*, 294 F.3d at 1242.

[7]We do note that district courts are giving variations of pretext instructions, which of course are proper under both *Palmer* and *Reeves*. *See, e.g., Cleveland v. Home Shopping Network, Inc.*, No. 03-11924, slip op. 2104, 2111-12 (11th Cir. May 11, 2004)

16

WILSON, Circuit Judge, concurring in result:

I agree with the result reached in today's opinion because I agree that Mr. Conroy was not prejudiced by the trial court's refusal to give his requested pretext instruction. I write separately because, unlike the majority, I am persuaded by decisions of other circuits that present strong reasons for *requiring* a pretext instruction. *See Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1241 (10th Cir. 2002); *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 280 (3d Cir. 1998); *Cabrera v. Jakabovitz*, 24 F.3d 372, 382 (2d Cir. 1994).

The Supreme Court has twice felt it necessary to clarify the confusion among the differing approaches to pretext analysis in discrimination cases. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 343 (6th Cir. 1997) (discussing three distinct approaches to proving pretext). In *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993), the Court said, "The factfinder's disbelief of the reasons put forward by the defendant . . . may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination . . . ." *Id.* at 511 (footnote omitted). In *Hicks*, the Court flatly rejected the so-called "pretext-plus" approach to discrimination analysis, which had required the plaintiff not only to demonstrate that the employer's asserted

17

reasons were pretextual, but also to introduce additional evidence of discrimination. *See id*; *see also Kline*, 128 F.3d at 343-44 (discussing effect of *Hicks* on circuit split).

Despite the Court's holding in *Hicks*, federal courts did not abandon the "pretext-plus" theory. In *Reeves v. Sanderson Plumbing Prods., Inc.*, 197 F.3d 688 (5th Cir. 1999) (per curiam), the Fifth Circuit reversed a jury verdict in favor of plaintiff-employee because employee failed to present sufficient additional evidence that the employer acted out of discriminatory animus. The Supreme Court reversed, explaining that *Hicks* forbade summary judgment for a defendant where the plaintiff, after satisfying the requirements of a prima facie case, presented evidence that the defendant's proffered explanation was pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-49 (2000).

As these cases demonstrate, this has been a difficult matter for courts, a likely indication that it will also be difficult for jurors. The majority correctly notes that this Circuit, both before and after *Reeves*, permitted a jury to infer discrimination if it disbelieved the employer's stated reasons for termination. However, I consider the danger great that a jury might make the same mistake that many courts continued to make even after *Hicks*. Jurors are likely to be confused where, as here, the law the jury should have been instructed on has proven too

18

difficult even for federal courts to discern without repeated guidance from the Supreme Court. Thus, in my view, if a party requests an instruction on pretext, the district court must give one.

I agree with the majority that failure to give a requested pretext instruction warrants reversal only if such failure prejudicially harms the requesting party. *See Wood v. President & Tr. of Spring Hill Coll. in the City of Mobile*, 978 F.2d 1214, 1222 (11th Cir. 1992).

In this case, the district court ensured that the jury adequately understood the complex issues involved. Specifically, the district court permitted counsel to argue the substantive law of *Reeves* and *Hicks* in arguments before the jury.[1] While

---

[1] The majority opinion also reasons that the district court's charge to the jury, including instructions on burden of proof, credibility of witnesses and reasonable inferences drawn from introduced evidence, also ensured that the jury adequately understood the law. I am not persuaded that these instructions were sufficient to inform the jury that it could infer discrimination if it disbelieved the employer's stated reasons for termination.

The district court instructed that Mr. Conroy must prove by a preponderance of the evidence that the defendant intentionally discriminated against him on the basis of his age. A rational juror might very well interpret such an instruction to require affirmative proof of discriminatory intent. In other words, in Mr. Conroy's case, a rational juror might have concluded that, while Mr. Conroy successfully demonstrated that Abraham Chevrolet's proffered reason for discharging him was pretextual, Mr. Conroy could not prevail for having failed to offer any credible evidence directly suggesting a discriminatory animus. Combined with the district court's instruction on business judgment, which explained to the jury that it could not second guess Abraham Chevrolet's legitimate business motives, it is not difficult to see how a jury might have been dissuaded from finding discrimination even if it disbelieved Abraham Chevrolet's proffered reasons for discharge.

The district court also instructed the jury on reasonable inferences jurors are entitled to make based upon common sense. However, such an instruction does not mean that the jury will know without being told that its disbelief in the employer's proffered reason may be evidence that will support a finding of intentional discrimination. In light of the amount of case law dedicated to shaping and refining the discrimination law into its present form, it would be

19

arguments of counsel are an imperfect substitute for explicit instruction provided by the court, *see Starr v. United States*, 153 U.S. 614, 626 (1894) ("[T]he influence of the trial judge on the jury is necessarily and properly of great weight, and . . . his lightest work or intimation is received with deference, and may prove controlling."), in this case, such arguments mitigated any harm that may have resulted from inadequate jury instruction.

Moreover, the uncontroverted evidence at trial was that Mr. Conroy's position was filled by a man older than Mr. Conroy. The evidence also demonstrated that Mr. Conroy failed to meet Abraham Chevrolet's standards for commercial sales. In light of this evidence, it is probable that the jury chose to believe the reasons articulated by Abraham Chevrolet for Mr. Conroy's discharge. Thus, while I believe that the district court erred in refusing to give the requested pretext instruction, there was no prejudicial harm *in this case*.

Providing the jurors clarification on a point of law that has eluded federal courts until quite recently is more than appropriate. It should be *required*. Where requested, I believe it is error to refuse to give a pretext instruction.

---

disingenuous to argue that the application of the law is nothing more than a matter of common sense.

Finally, the district court instructed the jury that it could discredit a witness's testimony if it found the testimony inconsistent or unbelievable. This instruction, however, merely allowed the juror to disbelieve a particular witness. It said nothing about what the jury may do or infer once the jurors had decided to disbelieve the employer's proffered reason.