HILL, Circuit Judge,
dissenting:
Basing an evidentiary ruling on an erroneous view of the law constitutes an abuse of discretion per se. Conroy v. Abraham Chevrolet-Tampa, Inc., 375 F.3d 1228, 1232 (11th Cir.2004). I believe the majority has applied an erroneous view of the law to reject Henderson’s claim of error in the trial court’s exclusion of the results of his polygraph test, offered to bolster his testimony that he was innocent of the charge of use of excessive force. If so, the exclusion was a per se abuse of discretion, certainly extremely prejudicial, and, therefore, reversible error.
The district court excluded the results of two different polygraph tests, one conducted by the FBI and one conducted by a private examiner at Henderson’s request. Both showed that he' truthfully answered questions regarding the charged incident. In excluding these tests, the district court relied upon the magistrate judge’s Daubert analysis of the admissibility of the tests.[1] This analysis concluded that Rule 702 required the exclusion of the polygraph evidence because it was not sufficiently scientific. The majority, as did the district court, adopts this conclusion.
I believe such a conclusion is foreclosed by our en banc opinion in United States v. Piccinonna, 885 F.2d 1529 (11th Cir.1989). In Piccinonna, we held that “the science of polygraphy has progressed to a level of acceptance sufficient to allow the use of polygraph evidence in limited circumstances where the danger of unfair prejudice is minimized.” Id. at 1537. Furthermore, we said that as to Rule 702 governing the admissibility of expert testimony, “the trial court may exclude polygraph expert testimony because 1) the polygraph examiner’s qualifications are unacceptable; 2) the test procedure was unfairly prejudicial or the test was poorly administered; or 3) the questions were irrelevant or improper.” Id. As I believe the record is clear that none of these factors was present in the proffered tests, I believe the district court erred in excluding the evidence.
*1310 It appears that our panel has reversed the holding of Piccinonna that polygraph evidence is sufficiently reliable to be generally admissible at trial in this circuit. Instead, the majority agrees with the magistrate judge’s conclusion that such evidence is inherently unscientific.[2] Only this court sitting en banc can accomplish such a reversal.[3] While such evidence may be excluded for other reasons, including those listed above, its exclusion for not satisfying the Daubert factors is based upon an erroneous view of the law of this circuit, and is, therefore, a per se abuse of discretion.[4]
I am troubled as well by the rejection of Henderson’s claim of error in the trial court’s decision to admit some very troubling testimony by the victim’s treating physician. The physician was not permitted to testify as an expert because the government failed to provide the defense with sufficient notice. Nonetheless, she was permitted to testify, over objection, that the victim’s injury was the result of a blow to the left side of his face, the very conduct for which Henderson was charged. This testimony concerning the ultimate factual issue in the case could not have been more prejudicial, and I believe it to be in direct contravention of Rule 702(c). Subsection (c) was added to Rule 702 in 2000 to avoid precisely this sort of “risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.” Fed.R.Evid. 701, Advisory Committee Note.
A lay witness may offer an opinion only if it is not based on scientific, technical or other specialized knowledge within the scope of Rule 702. Fed.R.Evid. 701. It is clear to me that the physician in this case, although barred from giving her expert opinion, was asked by the government for just such an opinion regarding the source of the victim’s injuries. Furthermore, since the source of this injury was the ultimate factual issue in the case, I believe that the testimony was not only inadmissible expert testimony, but highly prejudicial. I believe that its admission was reversible error.
Finally, I am also troubled by the exclusion of Henderson’s evidence regarding proper police procedure for the officer’s gun during a takedown,[5] and the admission *1311 of evidence that the sheriff who hired Henderson was removed for fraud.[6]
Without analyzing these claims, I would note that even if none of Henderson’s individual claims of error had been sufficient, standing alone, to give me pause as to this conviction, I am confident that all of them, taken together, are sufficient to raise grave doubts as to the fundamental fairness of Henderson’s trial and conviction. United States v. Blasco, 702 F.2d 1315, 1329 (11th Cir.1983) (“A piecemeal review of each incident does not end our inquiry. We must consider the cumulative effect of these incidents and determine whether, viewing the trial as a whole, appellants received a fair trial as is their due under our Constitution”). Whatever we think about the charges against him, Henderson has a right to expect that his trial will be conducted according to due process of law. After such a trial, a conviction may be relied upon not only for its correctness, but also for its fundamental fairness.

. Henderson filed a motion in limine seeking to have the results of both tests admitted at trial. The magistrate judge recommended denial of the motion, and the district court adopted the magistrate's report and recommendation in its entirely.

. The district court's exclusion of the polygraph evidence resulted from adoption of the magistrate judge's Report and Recommendation. That report tracks language found in Piccinonna but it tracks the dissent. Perhaps this is a compliment to those of us who dissented in that case, but, alas, the majority opinion is the precedent.

. The majority appears to believe that Daubert overruled Piccinonna by instituting a new test for determining the admissibility of scientific evidence. I do not believe, however, that the adoption of this new test, without any mention of Piccinonna, had the effect of undoing the holding of Piccinonna that polygraph evidence is sufficiently reliable to be generally admissible at trial. As I understand Piccinon-na, the results of a particular polygraph test may be inadmissible if the challenger is successful in showing that the results are unreliable for one of the three reasons enumerated in Piccinonna. This was, for example, the reason that the polygraph test was held inadmissible in Gilliard because the particular test at issue was administered unreliably, not because polygraphy itself is inherently unreliable. 133 F.3d at 814-15. Since there was no showing in this case that the particular test was administered unreliably, the exclusion of probative evidence of truthfulness merely because it was the product of polygraphy seems to me to be contrary to Piccinonna and reversible error.

. We have held that prosecutorial suppression of exculpatory polygraph evidence admissible under Florida law constitutes a Brady violation. Jacobs v. Singletary, 952 F.2d 1282, 1287-89 (11th Cir.1992).

. As I read the record, the ultimate reason the district court disallowed Henderson's expert to testify that Henderson followed correct po *1311 lice procedure in "disarming himself” before the takedown was simply that the government had not introduced expert testimony to the contrary. This does not seem to me a correct legal basis for the exclusion, nor a plausible one.

. Since the district court prohibited speaking objections, it is not clear whether the defendant's reasons for offering this evidence were completely clear to the court.