**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 13, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KIJUANA CHAMBERS,

    Plaintiff-Appellant,

v.

M.H. MELMED, M.D., P.C.,

    Defendant-Appellee.

No. 04-1130
(D.C. No. 00-RB-1794 (CBS))
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **EBEL** , **HOLLOWAY** , and **LUCERO** , Circuit Judges.

This appeal arises following a jury determination that defendant M.H.

Melmed, M.D., P.C., ("Melmed") did not discriminate against plaintiff-appellant,

Kijuana Chambers in denying or delaying artificial insemination ("AI") services

to her because of her blindness. At trial Chambers sought injunctive relief under

Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, <u>et</u>

<u>seq.</u>, and damages under Section 504 of the Rehabilitation Act of 1976 ("Section

504"), 29 U.S.C. § 794(a). Challenging various jury instructions and the denial of

---

   * This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

her post-trial motion for judgment as a matter of law, Chambers appeals. We **DISMISS** in part and **AFFIRM** in part.

## I

As an initial matter, we must determine whether an Article III case or controversy is presented regarding Chambers' ADA claims for prospective injunctive relief. [1] The existence of a live case or controversy is a constitutional predicate to federal court jurisdiction, and must exist at all stages of the litigation. McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996). Under Title III of the ADA, Chambers may seek only injunctive relief. § 12188(a). "When a party seeks only equitable relief, as here, past exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects." Id. (citing Beattie v. United States, 949 F.2d 1092, 1094 (10th Cir. 1991)). A request for prospective relief can be mooted by a defendant's voluntary cessation of the challenged activity if it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., 528 U.S. 167, 190 (2000) (quotation omitted); see also Tandy v. City of Wichita, 380 F.3d 1277, 1291 (10th Cir. 2004). We are convinced that formidable standard is met. Melmed testified

---

[1] Although the parties do not argue Article III mootness on appeal, this court is obliged to consider this question sua sponte. See Utah Animal Rights Coalition v. Salt Lake City Corp., 371 F.3d 1248, 1255 (10th Cir. 2004).

at trial, and his counsel represented at oral argument, that the clinic no longer offers AI services to any patients, whether sighted or unsighted, and does not plan on doing so in the future. Further, although Chambers testified that she wishes to have another child and would be willing to receive AI services if Melmed were to begin offering them again, she has since had a child and moved to Davenport, Iowa. As the evidence at trial indicates, Chambers' AI treatments required monthly visits to the clinic, ovulation medication and monitoring, and the care and supervision of a physician. Given that Chambers now lives 850 miles away, it is difficult to imagine that she would make monthly trips to a clinic in a city where she no longer lives, particularly when she already has a small child to care for, even were Melmed to begin offering these services again. As we have stated, the "crucial question is whether 'granting a present determination of the issues offered . . . will have some effect in the real world.'" Utah Animal Rights Coalition , 371 F.3d at 1256. Accordingly, because these changes are permanent in nature and "foreclose a reasonable chance of recurrence of the challenged conduct" we conclude there is no real and immediate threat of repeated injury. Tandy , 380 F.3d at 1291. Because Chambers' claims of error in jury instructions 12, 13, 22, and proposed instructions 22, 23, 24, and 42 relate to her ADA claims, her appeal of these issues is moot, as is her challenge to the denial of judgment as

3

a matter of law as it relates to her ADA claims. [2]

## II

Chambers faces two additional obstacles in her appellate challenge to the district court's jury instructions. First, she has failed to comply with our local rules requiring that litigants in this circuit identify in their opening brief where the record demonstrates that issues on appeal were raised and ruled upon. 10th Cir. R. 28.2(C)(2) (requiring parties to identify where issues on appeal were raised and ruled upon) and 10th Cir. R. 28.2(C)(3)(b) (noting that "[b]riefs must cite the precise reference in the record where a required objection was made and ruled on, if the appeal is based on . . . the giving of or refusal to give a particular jury instruction."). Generally, if the party seeking review fails "to include and reference the portion of the record wherein their objection and the district court's ruling thereon may be found," Jetcraft Corp. v. Flight Safety Int'l, 16 F.3d 362, 366 (10th Cir. 1993) (explaining 10th Cir. R. 28.2(C)(2)), we may affirm the district court's instruction without reaching the merits of the issue. Allen v. Springville City, 388 F.3d 1331, 1333-34 (10th Cir. 2004). Chambers' brief does

---

[2] As a result of our determination of mootness, we do not address Melmed's arguments that Chambers failed to preserve her claims as to jury instructions 12 and 13, and proposed instructions 24, and 42 for appeal. However, because Chambers argued below that her proposed pretext instructions applied to both her ADA and Section 504 claims, we will address whether she preserved her proposed instructions 24 and 42 to the extent they might apply to her Section 504 claim in part II below.

not identify where her objections to the instructions were raised and ruled upon below. Her attempt to cure this deficiency in her reply brief is not sufficient to satisfy the requirement of our local rule. See Allen, 388 F.3d at 1333-34. In any event, even had she met this requirement, it would not have furthered her appeal for the reasons cited below.

Melmed claims, and we agree, that Chambers' challenges to jury instructions 16 and 17, and to the district court's failure to give her proffered instructions 27 and 28, have not been preserved for appeal. Our initial inquiry on considering a party's challenge to a jury instruction is whether that party preserved that issue for appeal by objecting before the district court on the same grounds raised on appeal. See Comcoa, Inc. v. NEC Telephones, Inc., 931 F.2d 655, 660-61 (10th Cir. 1991). No party may assign as error the failure to give an instruction unless that party objects thereto stating distinctly the matter objected to and the grounds of the objection. See Fed. R. Civ. P. 51. "In this circuit, to comply with Rule 51 a party must both proffer an instruction and make a timely objection to the refusal to give a requested instruction." Giron v. Corr. Corp. of America, 191 F.3d 1281, 1288-89 (10th Cir. 1999). A party does not "satisfy the requirements for Rule 51 by merely submitting to the court a proposed instruction that differs from the instruction ultimately given to the jury." Abuan v. Level 3 Communications, Inc., 353 F.3d 1158, 1172 (10th Cir. 2003) (internal quotations

5

and citations omitted).  Our review of the record discloses that Chambers did not object to jury instructions 16 and 17, and although she proffered her proposed instructions 27 and 28 pre-trial, she did not address them at the charging conference, nor did she object to the district court's refusal to give them.  As to her proposed pretext instructions 24 and 42, despite some tangential discussion at the charging conference, she did not raise them during the conference as proffered instructions, nor did she object to the district court's refusal to give them.  Chambers' failure to object to jury instructions 16 and 17, and her proffer of the four additional instructions, without more, was not enough to preserve these issues for appeal.[3]

We will, therefore, review Chambers' challenges to these jury instructions only for plain error.  "Plain error exists if the contested instruction was so prejudicial or lacking in its elements that justice cannot have been served." United States v. Kennedy, 64 F.3d 1465, 1479 (10th Cir. 1995).  When we review jury instructions, the instructions must be read and evaluated in their entirety to discern if they correctly state the law and fairly and adequately cover the issues presented.  United States v. Heckard, 238 F.3d 1222, 1231 (10th Cir. 2001).

---

[3] Chambers argues that the district court's charging-conference procedures contributed to her failure to make the appropriate arguments and objections.  Our review of the record shows no such limitation, and we have rejected similar arguments that we disregard the clear standards of Rule 51 and our precedent in the past.  See United States v. Bornfield, 184 F.3d 1144 (10th Cir. 1999).

Chambers argues that jury instructions 16 and 17 were erroneous in two ways: first, because although they informed the jury of the elements and basic definitions under Section 504, they did not "provide the jury with a list of what constitutes 'discrimination' under Section 504, thereby preventing the jury from considering all of the applicable forms of conduct prohibited by Section 504;"[4] and second, that "the definition of 'otherwise qualified' incorrectly informed the jury." Chambers further argues that the district court's failure to give her proffered instructions 27 and 28, which sought to limit the jury's consideration on the "otherwise qualified" and "receives federal financial assistance" elements of a Section 504 claim, was also error. Because the district court informed the jury of the requirements for a prima facie case under Section 504 with appropriate definitions, and correctly tracked the statutory language of that section, we cannot conclude that the instructions given, and the failure to give the two proffered instructions, were prejudicial or so lacking that the interests of justice were not served. See Kennedy, 64 F.3d at 1479; see also Schuchmann, 235 F.3d at 1222 ("It is not error to refuse to give a requested instruction if the same subject matter

_____

   [4] Chambers does not directly allege on appeal that the district court erred in refusing to give her proffered instruction 26, but ties this argument to her claim of error in instruction 16 and 17. This claim as well was not preserved for appeal because Chambers posed no objection to the district court's refusal to give the instruction. See Giron, 191 F.3d 1288-89. To the extent this is a separate claim, it likewise does not amount to plain error. See FDIC v. Schuchmann, 235 F.3d 1217, 1222 (10th Cir. 2000).

is adequately covered in the general instructions.") (quotation omitted).

Additionally, we do not discern any plain error or prejudice arising from the district court's definition of "otherwise qualified" in instruction 17. To the extent Chambers now argues that the language requiring reasonable deference to the defendant's judgment as to what eligibility requirements are essential is error, Chambers did not raise this ground for error before the district court. Accordingly, we decline to consider it for the first time on appeal. See Fed. R. Civ. P. 51; Singleton v. Wulff, 428 U.S. 106, 120-121 (1976). [5]

Finally, in light of the district court's instructions to the jury that it could "believe everything a witness says, only part of it, or none of it," combined with its instructions on drawing inferences from the evidence and weighing the credibility of witnesses, we do not consider the court's failure to give Chambers' proffered instructions 24 and 42 on pretext, relating to her Section 504 claim, to be plain error. The sole discrepancy in the evidence is whether the clinic staff had informed Melmed of the issues with Chambers' hygiene, emotional outbursts, and functional limitations prior to the decision to delay AI services. Chambers argued to the jury that these discrepancies were reasons to disbelieve Melmed's

---

[5] Even considering this unpreserved claim, "satisfying plain error review requires showing that the jury instruction was not only erroneous and prejudicial, but that failure to set aside the jury's verdict would result in a fundamental misjustice." Allan, 388 F.3d at 1334, n2. Chambers cannot meet this standard.

explanation of the reasons for delaying AI services. See Conroy v. Abraham Chevrolet-Tampa Inc., 375 F.3d 1228, 1235 (11th Cir. 2004); Gehring v. Case Corp., 43 F.3d 340, 343 (7th Cir. 1994). Thus, there is no plain error given that the jury was instructed, and the plaintiff argued, that the defendant's purported explanation could be disregarded if they chose to disbelieve all or part of a witness's testimony. The lack of error is even more telling under the facts of this case considering that Chambers' burden under Section 504 was to show that she was discriminated against "solely by reason of her disability." Powers v. MJB Acquisition Corp., 184 F3d. 1147, 1151 (10th Cir. 1999). "Plain error exists if the contested instruction was so prejudicial or lacking in its elements that justice cannot have been served." Kennedy, 64F.3d at 1479. We cannot draw that conclusion in this case.

### III

We now turn to the one claim which was preserved for appeal – Chambers' claim that instruction 19 was erroneous in its explanation of the discrimination requirement under Section 504. Chambers argues that because the instruction added the element that Melmed "must have acted with the motive to discriminate against plaintiff on the basis of her disability" instruction 19 incorrectly informs the jury as to what it must find for "intentional discrimination" under Section

9

504.[6]  Yet, Chambers forgets that instruction 19 became operative only if the jury first found that Melmed had discriminated against her solely because of her disability as outlined in instruction 16, which incorporates instruction 17 for the definition of "discriminated."  Chambers further ignores that instruction 18 clarified that "discrimination" under Section 504 could occur even if "unintentional."  Such instructions are an accurate explanation of the requirements under Section 504.  See Powers, 184 F.3d at 1151.  The predicate nature of instruction 19 is shown by its text,[7] and we discern nothing in the

---

[6] The actual instruction states:
> "Intentionally discriminated" means that the defendant acted with the motive to discriminate against the plaintiff on the basis of her disability or that the defendant was deliberately indifferent to the strong likelihood that its actions likely would result in a violation of the plaintiff's federally protected rights.

The second sentence of this instruction was drawn from Powers' articulation of the minimum requirement for "intentional discrimination." It is difficult to discern how an instruction given in the disjunctive could have prejudiced Chambers, when the latter half of the instruction established that "intentional discrimination"  may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom–a far lower standard than the motive to discriminate standard of which Chambers complains.  Powers, 184 F.3d at 1153.

[7] Instruction 19 begins:
> If you find that plaintiff, Kijuana Chambers, has proven all four essential elements of her claim under Section 504 of the Rehabilitation Act, as stated in Instruction No. 16, then you may award compensatory damages to the plaintiff only if you also find, by a preponderance of the evidence, that defendant, M.H. Melmed, M.D., P.C., "intentionally discriminated" against the plaintiff on the

(continued...)

10

remaining instructions that would have led the jury to misapply the appropriate standards for each determination. The verdict form clearly indicates that the jury did not find that Melmed had discriminated against Chambers as defined in instructions 16, 17, and 18, and therefore it never reached consideration of whether Melmed "intentionally discriminated." On review of the jury instructions as a whole, we have no substantial doubt that the jury was fairly guided on the requirements for Chambers' Section 504 claim. See United States v. Smith, 13 F.3d 1421 (10th Cir. 1994).

## IV

We turn lastly to Chambers' claim that she was entitled to judgment as a matter of law on her Section 504 claim. We review a district court's denial of a motion for judgment as a matter of law de novo, applying the same standard as the district court. Strickland Tower Maintenance, Inc. v. AT&T Communications, Inc., 128 F.3d 1422, 1426 (10th Cir. 1997). Under that standard, judgment as a matter of law is only appropriate when a party has been fully heard on an issue and "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). We "may find error in the

---

[7](...continued)
    basis of her disability.
(emphasis added)

11

denial of such a motion only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion," and in making this determination "we must construe the evidence and inferences most favorably to the nonmoving party." Allen v. Wal-Mart Stores, Inc., 241 F.3d 1293, 1296 (10th Cir. 2001).

Chambers contends that she disproved Melmed's defense based on her version of the facts in the case. Despite Chambers' view of the facts as conclusively establishing discrimination, our review of the record shows there is substantial evidence from which a reasonable jury could draw the opposite conclusion. Reviewing the facts in the light most favorable to Melmed, the record reveals that Melmed provided AI services to Chambers despite her disability for over four months, and delayed services only upon Chambers' responses to Dr. Horvath's inquiries on the extent of her support network and her preparation to care for a child. Additional concerns arose on Chambers' hygiene and emotional outbursts. Dr. Horvath, Chambers' treating physician when AI services were delayed, testified that she believed that although Chambers' blindness contributed to her functional limitations, her problems were not necessarily related to her blindness. Although there was conflicting evidence presented on the motivations for Drs. Horvath's and Melmed's concerns and actions, there is sufficient evidence that a reasonable jury could have concluded

12

that Melmed did not discriminate against Chambers solely on the basis of her blindness. The jury resolved this controversy in its verdict, and we conclude that they had sufficient legal evidentiary basis to do so.

Accordingly, we **DISMISS** Chambers' appeal as it relates to her ADA claim as moot, and otherwise **AFFIRM**.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge

13