[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-12004

_____

D.C. Docket No. 01-07621-CV-JEM

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2005
THOMAS K. KAHN
CLERK

GEORGE AKOURI,

                                                        Plaintiff-Appellant
                                                        Cross-Appellee,

versus

STATE OF FLORIDA
DEPARTMENT OF TRANSPORTATION,

                                                        Defendant-Appellee
                                                        Cross-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 11, 2005)

**(AMENDED as of June 7, 2005)**

Before MARCUS, FAY and SILER*, Circuit Judges.

FAY, Circuit Judge:

_____

*Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Plaintiff George Akouri ("Akouri") appeals the district court's judgment notwithstanding the jury verdict, which reduced Akouri's $700,000 jury award for back-pay and compensatory damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") to nominal damages, and the district court's denial of his motion for new trial.[1] Defendant State of Florida Department of Transportation (the "DOT") cross-appeals, contending that the district court erred in denying its motion for summary judgment and motion for judgment as a matter of law on the issue of discrimination. We find no error and affirm the district court.

## Background

Akouri is a United States citizen who was born in Lebanon and has lived in the United States since 1984. He holds a bachelor's degree in civil engineering, a general contractor's license, and a Professional Engineer license. In 1995, Akouri began his employment with the DOT as a maintenance contract engineer and remained in that position until his termination in May 2001.

During his employment with the DOT, Akouri unsuccessfully applied for three

---

[1]Akouri also appeals the district court's order granting Defendant's motion for a conditional trial as to damages, in the event this Court reversed the district court's judgment. However, because we affirm the district court's judgment notwithstanding the verdict as to damages, this issue is moot.

promotions.[2]  According to Akouri's trial testimony, Blanchard told Akouri that he had not been promoted to the Atkins position because it supervised white employees, as opposed to black or Hispanic employees, and that they would not take orders from him, particularly if he had an accent.  After being rejected the third time, in August 2000, Akouri filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging national origin discrimination.  Akouri was later terminated from his employment with DOT for misuse of his government computer in May 2001.  Akouri subsequently instituted the present action under Title VII.

The district court granted, in part, the DOT's motion for summary judgment as to the Denti position, but denied it as to the other two promotions and the retaliatory discharge claim.  The case proceeded to jury trial on Akouri's surviving claims.

On the first day of trial, the district court informed the parties that it had three

[2]In June 2000, Akouri applied for a position as the Assistant Maintenance Engineer for the Fort Lauderdale Maintenance Office.  Akouri was considered and interviewed along with five other applicants, but ultimately, Thomas Reynolds was selected for the position [hereinafter, the "Reynolds position"].

Also in June 2000, Akouri applied for a position as an Assistant Maintenance Engineer for the West Palm Beach Maintenance Office, which reported to Paul Blanchard ("Blanchard"), who, in turn, reported directly to Cleo Marsh ("Marsh").  Akouri again was considered along with five other qualified applicants and interviewed by a panel that included Blanchard and Marsh.  Mike Atkins was selected to fill the position [hereinafter, the "Atkins position"].

Finally, in August 2000, Akouri applied for a position as the Resident Area Engineer for the Fort Pierce Construction Office, but, this time, was not interviewed.  George Denti was selected to fill this position [hereinafter, the "Denti position"].

3

other cases waiting to be tried and asked Akouri's counsel when he expected to rest. Akouri's counsel responded that he expected to continue through the following afternoon and the court told him he would have until 3:30PM. There were no objections. The following afternoon, the court reminded counsel of the 3:30PM timeframe, but counsel requested additional time. The court granted Akouri's counsel an additional hour and fifteen minutes within which to conclude his case, to which Akouri's counsel responded, "Okay, Your Honor, that's fine." At no point did Akouri's counsel object to the court's imposed time limitations.

At the close of all the evidence, the DOT made an ore tenus motion for judgment as a matter of law on two grounds regarding the Atkins position: (1) Akouri failed to establish a prima facie case, and (2) Akouri failed to establish that the DOT's reasons were pretextual. The Court reserved ruling on the DOT's motion. Then, at the charge conference, the DOT made an ore tenus motion to strike the interrogatories regarding damages because Akouri had not introduced any admissible evidence of damages at trial. The district court denied the motion to strike, but allowed the DOT to amend its motion for judgment as a matter of law regarding the evidence of damages. The matter was then submitted to the jury.

The jury returned a verdict in favor of the DOT on the retaliatory discharge claim and found no discrimination on the failure to promote claim for the Reynolds

4

position. However, on the discriminatory failure to promote claim for the Atkins position, the jury returned a verdict in favor of Akouri, awarding $148,000 to compensate for net lost wages and benefits ("back-pay") and $552,000 to compensate for emotional pain and mental anguish ("compensatory damages"). According to the Jury Interrogatories, the jury did not believe that Akouri was denied the Atkins position for any reason other than his national origin.

The district court entered final judgment in accordance with the jury's verdict, and the DOT, thereafter, moved for judgment as a matter of law notwithstanding the verdict ("JNOV"). The DOT argued that: Akouri failed to prove a prima facie case of discrimination because the evidence did not show that Akouri was equally or better qualified than the selected applicant, Mr. Atkins; Akouri failed to prove that the DOT's stated reasons for not promoting him were pretextual; and Akouri failed to adduce any evidence to support the jury's damages awards, in particular, evidence of his actual salary while employed by the DOT and his emotional state after being denied the promotion.

The district court granted, in part, the DOT's JNOV as to damages and reduced Akouri's award to $1.00 in nominal damages on the basis that Akouri failed to prove any actual damages – either monetary or non-monetary. The court observed that, while the announcement describing the promotion provided the salary range Akouri

5

would have received had he been promoted, Akouri presented no evidence of his actual salary such that the jury could calculate the difference in wages resulting from the discrimination. As to the compensatory damages, the court again found no evidence to support the damages, and, likewise, set aside the jury's award of $552,000.

The district court denied, in part, the JNOV with regard to the discriminatory failure to promote claim, having concluded that Akouri's testimony about Blanchard's comment to him shortly after the Atkins position had been filled was direct evidence of discrimination.

The DOT thereafter moved the district court to conditionally grant a new trial as to both liability and damages on the Atkins position claim in the event the JNOV was reversed or vacated on appeal, and Akouri moved for a new trial on the damages question. The district court conditionally granted the DOT's motion for new trial and denied Akouri's motion. Akouri now appeals and the DOT cross-appeals.

## Analysis

### I.

Akouri argues that the district court erred in granting the DOT's motion for JNOV and overturning the jury's award of $148,000 in back-pay and $552,000 in compensatory damages.

A judgment as a matter of law is subject to de novo review. Thosteson v. United States, 331 F.3d 1294, 1298 (11th Cir. 2003). A court may grant a motion for judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). The court should review all of the evidence in the record, draw all reasonable inferences in favor of the non-moving party, and disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51, 120 S.Ct. 2097 (2000). Credence should also be given to "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. (internal quotations omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 150.

## A.

Akouri contends that the district court erred in setting aside the jury's award of $148,000 in back pay because the jury instructions expressly permitted an award of back-pay to the date of trial. Akouri also contends that by allowing such an instruction, the DOT waived any argument it had to challenge the sufficiency of the

7

evidence as it related to back-pay damages. We find these arguments unpersuasive.

First, the fact that the jury instructions defined the period involved in the back-pay claim is irrelevant to our inquiry into whether Akouri adduced sufficient evidence to support the jury's back-pay award. Back pay is "the difference between the actual wages earned and the wages the individual would have earned in the position that, but for the discrimination, the individual would have attained." Gunby v. Pennsylvania Electric Co., 840 F.2d 1108, 1119-20 (3d Cir. 1988). "[U]nrealistic exactitude is not required" as the back-pay calculation may be based on "just and reasonable inference" of the missing or imprecise figure. Pettway v. Am. Cast Iron Pipe Co., 494 F.2d 211, 260 (5th Cir. 1974).[3]

Akouri argues that the DOT did not request an instruction which would have obligated the jury to cut-off a back-pay award on the failure to promote claim on the date of his subsequent discharge if he did not prevail on the retaliatory discharge claim. Akouri's argument misses the point entirely. The issue before us is not the sufficiency of the evidence pertaining to Akouri's projected earnings, but rather, as observed by the district court in its well-reasoned order, Akouri's failure to provide

_____

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

8

any evidence whatsoever of his <u>actual</u> <u>earnings</u> while employed with the DOT.[4] While the record contains evidence of a salary range indicating the amount Akouri would have earned had he received the promotion, the record is devoid of any evidence of his actual salary at the time he was employed by the DOT. Thus, there was no figure from which the jury could have reasonably calculated net lost wages (the difference between what Akouri was earning and what he could have earned if promoted). It is <u>elementary</u> that a plaintiff must, at a minimum, show his earnings during his employment before the jury can begin a reasonable calculation of a back-pay award. This could have easily been accomplished by asking one question to Akouri or introducing into evidence a pay stub.

In his effort to have us reinstate the back-pay award, Akouri also argues that the DOT has waived its ability to challenge the jury award on a theory of insufficient evidence because it did not challenge the jury instructions prior to jury deliberations. We find this argument similarly unavailing. There was nothing wrong with the jury instructions – they correctly stated the law. The failure to object to proper jury instructions is not related to the question of the sufficiency of the evidence.

To the extent Akouri contests the DOT's ability to challenge the sufficiency of

---

[4]Interestingly, Akouri makes no effort to explain the glaring absence of the evidence the district court, in its order, deemed so essential to his back-pay damages claim, and instead, chooses to circumvent the issue in its entirety.

the evidence in its motion for JNOV, we find that the DOT has not waived its argument. At the charge conference, the DOT moved to strike the damage interrogatories to the jury in their entirety on the ground that Akouri had failed to present any evidence of his salary while employed by the DOT. The district court felt the objection would be more appropriately raised as a Rule 50 matter and, therefore, permitted the DOT to amend and renew its Rule 50 motion. Accordingly, the DOT did not waive its evidentiary argument as it was plainly raised to the district court in a timely manner.

Notwithstanding Akouri's re-characterization of the DOT's judgment as a matter of law as a challenge to the jury instructions, we affirm the district court's order setting aside the back-pay award based on the fact that Akouri presented no evidence, let alone sufficient evidence, as to his salary while employed by the DOT, from which the jury could make a reasonable net lost wages calculation.

B.

Turning to the issue of compensatory damages, Akouri argues that the jury was entitled to infer from his demeanor while testifying at trial that he suffered emotional harm and mental anguish. Namely, in describing the "pain" of not being promoted despite excellent evaluations and in testifying "with emotion" about matters such as having to complain to his superiors about the discrimination and being insulted when

10

asked what kind of promotion he would have received in Lebanon, Akouri contends he was able to convey to the jury the emotional pain endured as a result of the discrimination. Despite the ephemeral nature of this evidence, the jury awarded Akouri $552,000 in compensatory damages for his emotional distress. Akouri contends the district court erred in setting aside the jury's award for emotional pain and suffering. We disagree. In our view, such "inferences" are insufficient to support the jury's award for compensatory damages, nor can we find anything in the record that does.

The standard of review for compensatory damages awards for intangible, emotional harm is "deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses." Ferrill v. Parker Group, Inc., 168 F.3d 468, 476 (11th Cir. 1999). "Once a defendant is found liable for the plaintiff's injury, the District Court has a great deal of discretion in deciding the level of damages to be awarded." Id. (citing Stallworth v. Shuler, 777 F.2d 1431, 1435 (11th Cir. 1985)).

As a general rule, general compensatory damages, as opposed to special damages, need not be proven with a high degree of specificity. See Ferrill, 168 F.3d at 476. Compensatory damages "may be inferred from the circumstances as well as proved by the testimony." Id. (quoting Gore v. Turner, 563 F.2d 159, 164 (5th Cir.

1977)).  A plaintiff may be compensated for intangible, psychological injuries as well as financial, property, or physical harms.  See Marable v. Walker, 704 F.2d 1219, 1220-21 (11th Cir. 1983) (holding that plaintiff's own testimony that he was embarrassed and humiliated by defendant's conduct was sufficient to support compensatory damages award).

In the case of emotional distress resulting from a constitutional violation, we are guided by the Supreme Court's decision in Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), which concluded that compensatory damages for emotional distress may not be presumed from every constitutional violation, but must be proven by competent, sufficient evidence.  Carey observed that such damages are "customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff."  Id. at 263-64.  The principles pronounced in Carey were applied under similar circumstances by our sister circuit in Price v. City of Charlotte, 93 F.3d 1241 (4th Cir. 1996).[5]  We agree with Price in concluding that although a

---

[5]The Fourth Circuit, in Price, conducted an analysis that surveyed opinions from the various circuits and amalgamated the following factors to aid triers of fact in determining the propriety of awarding compensatory damages for emotional distress as well as appellate courts in reviewing sufficiency challenges to such awards:  (1) whether the plaintiff lost the esteem of his/her peers; (2) whether the plaintiff suffered physical injury as a consequence of her emotional distress; (3) whether the plaintiff received psychological counseling or other medical treatment; (4) whether the plaintiff suffered a loss of income; (5) the degree of emotional distress; (6) the context of the events surrounding the emotional distress; (7) the evidence tending to corroborate the plaintiff's testimony; (8) the nexus between the challenged conduct and the emotional distress; and (9) any mitigating circumstances.  Price, 93 F.3d at 1254 (citing Spence v. Board of

12

plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation, "the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award for compensatory damages." Id. at 1254. "In marshaling the evidence necessary to establish emotional distress resulting from a constitutional violation, Carey instructs us that 'genuine injury' is necessary." Id. (quoting Carey, 435 U.S. at 264).

In the instant case, the only evidence Akouri presented that could conceivably be linked to emotional distress related to lost job opportunities. A review of the record reveals that Akouri made no attempt to describe any kind of harm, mental, emotional, or otherwise, arising from the discrimination. Despite Akouri's characterization of his testimony as "describing the pain" of not being promoted, Akouri not once described any "pain." The content of Akouri's testimony only went so far as to say that he was rejected the three times he applied for promotions that he

---

Educ. of Christina Sch. Dist., 806 F.2d 1198, 1201 (3d Cir. 1986); Miner v. City of Glen Falls, 999 F.2d 655, 663 (2d Cir. 1993); Fitzgerald v. Mountain States Telephone and Telegraph Co., 68 F.3d 1257, 1265-66 (10th Cir. 1995)). Because Akouri failed to show any evidence regarding emotional distress, we need not apply these factors.

13

believed he deserved. In our opinion, this testimony does not satisfy the requirement that the plaintiff must show actual injury by sufficient evidence.[6] Accordingly, the district court did not err in reversing the jury's award of $552,000 in compensatory damages.

## II. Motion for New Trial

Akouri also appeals the district court's denial of his motion for a new trial on the issue of damages as well as on the retaliation claim. We review the district court's denial of the motion for a new trial for abuse of discretion. See Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001).

With regard to the damages issue, Akouri contends the district court abused its discretion by setting time limits on his testimony during direct examination, and that because of such time limits, he was unable to present sufficient evidence as to damages. The Federal Rules of Evidence provide that a district court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). The

---

[6]Again, if Akouri suffered emotional pain or distress, it could have been presented by one or more direct questions during his testimony. No such effort was made.

14

record here clearly indicates that although the district court imposed certain time restrictions during trial, they were flexible and the judge made reasonable accommodations as became necessary. Specifically, when Akouri's counsel indicated that he would be unable to fully present his case within the court's original timeframe, the court extended the time allotted by an hour and fifteen minutes. Moreover, Akouri's counsel never indicated that the time extension was an insufficient amount of time within which to present his case, nor did he object or attempt to proffer any evidence relating to damages.[7] Because the record shows that the district court exercised reasonable control in managing the flow of the trial by establishing time limits, and because Akouri failed to adduce any evidence that the court acted inflexibly or unreasonably with respect to such time restrictions, we affirm the order denying Akouri's motion for a new trial on damages.

As to the retaliation claim, Akouri argues that he is entitled to a new trial because he proposed, and the district court refused, to give a pretext instruction to the jury. He contends that this omission greatly contributed to the jury finding in favor of the DOT on the retaliation claim in that because this claim was only supported by circumstantial evidence, the jury may have believed that retaliation was provable only

---

[7]It is apparent that the matters of Akouri's salary and any emotional pain or psychological injuries could have been covered in minutes.

through affirmative evidence of unlawful animus.

At the time Akouri requested the jury instruction, the district court found that it was duplicitous with the credibility of witnesses instruction and that current case law did not require it, therefore, he denied the instruction. The court then invited Akouri's counsel to explain why the pretext instruction should be included, and he declined. Moreover, this argument was not raised in Akouri's motion for new trial. The law of this Circuit is well-established and we find no error.[8]

## III. Cross-Appeal

### A.

We now turn to the merits of DOT's cross-appeal. First, the DOT appeals the district court's denial of its motion for summary judgment. The DOT contends that Akouri failed to establish a prima facie case of discrimination with regard to the DOT's failure to promote him to the Atkins position, and that the court erred by not granting summary judgment on that basis. However, we have held that, after a full trial and judgment on the merits, we will not review the pretrial denial of a motion for

---

[8]In this Circuit, it is not considered error to exclude a pretext instruction in an employment discrimination case. See Palmer v. University of Ga., 208 F.3d 969, 974-75 (11th Cir. 2000) (holding that a specific pretext instruction is not necessary); see also Conroy v. Abraham Chevrolet-Tampa, Inc., 375 F.3d 1228, 1233 (11th Cir. 2004) (holding that the Supreme Court's opinion in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000) does not require a pretext instruction to be given in employment discrimination cases, and thus, does not affect the holding in Palmer).

summary judgment. Lind v. United Parcel Service, Inc., 254 F.3d 1281 (11th Cir. 2001). Accordingly, we affirm the district court's order denying the DOT's motion for summary judgment.

B.

The DOT also contends on appeal that the district court erred in denying its motion for judgment as a matter of law on the Atkins position claim. The DOT argues that Akouri failed to establish a prima facie case of discrimination, and that, even assuming that he succeeded in establishing a prima facie case, Akouri failed to establish that the legitimate nondiscriminatory business reason for promoting Atkins, proffered by the DOT, was pretextual.

(1)

A plaintiff may establish a claim of illegal disparate treatment through either direct or circumstantial evidence. See Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999). Generally, direct evidence is "evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption." Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997) (citation omitted). With regard to discrimination, we have defined direct evidence as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" Damon v. Fleming Supermarkets of Fla.,

17

Inc., 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998)). Therefore, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor" constitute direct evidence of discrimination. Rojas v. Florida, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002) (quoting Schoenfeld, 168 F.3d at 1266). If the alleged statement suggests, but does not prove, a discriminatory motive, then it is considered circumstantial evidence. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004).

At trial, Akouri testified about a conversation he had with Blanchard shortly after Atkins received the promotion. According to Akouri's testimony, when he asked why Atkins had been chosen for the promotion, Blanchard responded that "the people working in the crew are not the same that are working in the office. There is no black or Hispanic [employees] in the back. There is always –they are all white and they are not going to take orders from you, especially if you have an accent, and something like that." We deem this language direct evidence of discrimination. There is no mere suggestion or need for inferences because the statement relates directly to the DOT's decision to promote Atkins over Akouri as Assistant Maintenance Engineer and blatantly states that the reason he was passed over for the promotion was his ethnicity. See Carter, 132 F.3d at 642 (holding that direct

18

evidence, by definition, is evidence that does not require an inferential leap between fact and conclusion). The statement itself clearly established that the premise for the DOT's employment decision was discriminatory.

Although Blanchard denied making the statement, we may not weigh the evidence or make credibility determinations when reviewing the district court's order denying a party's motion for judgment as a matter of law. See Reeves, 530 U.S. at 150 (holding that credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge). Thus, we do not disturb the jury's finding of discrimination, and affirm the district court's order denying the DOT's motion for judgment as a matter of law on Akouri's discriminatory failure to promote claim.

(2)

Finding that Akouri succeeded in establishing a prima facie case, we now address the DOT's argument that Akouri failed to establish that its proffered non-discriminatory business reason for not promoting him to the Atkins position[9] was pretextual. However, this argument is inapplicable where the plaintiff presents direct evidence of discrimination. Trans World Airlines, Inc. v. Thurston, 496 U.S. 111,

---

[9]The DOT contended that Akouri did not interview well "in regards to his demeanor during the interview as well as the substance and lack of elaboration in his interview answers."

19

121, 105 S.Ct. 613, 621-622 (1985). Here, Blanchard's discriminatory comments made shortly after the decision to promote Atkins and in direct response to Akouri's inquiry as to the reasons for the promotion decision constituted direct evidence of discrimination. Therefore, we reject the DOT's argument, finding no basis upon which to reverse the district court's denial of DOT's motion for judgment as a matter of law with regard to the Atkins promotion, and affirm the district court's decision.

## IV. Conclusion

The evidence presented at trial was insufficient for a reasonable jury to award back-pay and compensatory damages on Akouri's Title VII discrimination claim, however, we also find that Akouri presented direct evidence of discrimination sufficient to support the jury's finding of discrimination. Therefore, we AFFIRM the district court's order granting, in part, and denying, in part, the DOT's motion for judgment as a matter of law setting aside the jury's damages award and awarding nominal damages.[10] Moreover, we find that the district court did not abuse its discretion and, therefore, AFFIRM the district court's order denying Akouri's motion for new trial.

---

[10]It is incongruous that the affirmance of nominal damages on the failure to promote claim could be the basis of a claim for attorneys' fees when the monetary awards by the jury are being vacated as a result of the failure of counsel. Should such a request be made, the district court may consider the performance of counsel.

20

**AFFIRMED.**